UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA BOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 1578 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NEW PENN FINANCIAL, LLC, d/b/a SHELLPOINT MORTGAGE SERVICING, MTGLQ INVESTORS, L.P., and McCALLA RAYMER LEIBERT PIERCE, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Pamela Booker sued New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing, MTGLQ Investors, L.P., and McCalla Raymer Leibert Pierce, LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. Doc. 1. Booker settled with McCalla. Doc. 25. Shellpoint and MTGLQ move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Doc. 20. The motion is granted, but Booker will have a chance to file an amended complaint.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Booker's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips*

1

*v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Booker as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at this stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In 2008, Booker executed a Note and Mortgage for real property in Lisle, Illinois. Doc. 1 at ¶¶ 13-14. In 2010, she defaulted and foreclosure proceedings began. *Id.* at ¶ 18. The Note and Mortgage changed hands several times, *id.* at ¶¶ 15-17, 19, and eventually were assigned to MTGLQ, *id.* at ¶ 20. The servicing rights went to Shellpoint. *Id.* at ¶ 21.

Booker filed a Chapter 13 bankruptcy case on May 25, 2016. *Id.* at ¶ 22; *see In re Booker*, No. 16 B 17589 (Bankr. N.D. Ill.). Shellpoint filed a proof of claim on MTGLQ's behalf. Doc. 1 at ¶ 28. Shellpoint and MTGLQ were then served with Booker's Chapter 13 plan, which the bankruptcy court confirmed on September 16, 2016. *Id.* at ¶¶ 29-30. The plan provided in relevant part: "[Booker] surrenders her interest in the [Lisle property] to Seterus, Inc., Fannie Mae, Shellpoint Mortgage Servicing, New Penn Financial, LLC and JPMorgan Chase Bank, N.A. in full satisfaction of their claims." Doc. 1-11 at 6. On February 24, 2017, Booker received from Shellpoint (via a communication from its law firm) a Notice of Sale setting a foreclosure sale for March 7, 2017. Doc. 1 at ¶ 32; Doc. 1-16; Doc. 21 at 2.

Booker filed this suit four days later, on February 28, 2017. She alleges that Shellpoint's sending the Notice of Sale to her violated the automatic stay arising from her bankruptcy case, *see* 11 U.S.C. § 362, and that this violation of the automatic stay in turn violated the FDCPA and the ICFA. Doc. 1 at ¶¶ 37-104. The bankruptcy court formally lifted the automatic stay on March 23, 2017. *Booker*, No. 16 B 17589 (Doc. 35).

## Discussion

### I. FDCPA Claim

#### A. MTGLQ

To be liable under the FDCPA, a defendant must be a "debt collector." *See Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors' … ."). The FDCPA defines "debt collector," in pertinent part, as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*.

15 U.S.C. § 1692a(6) (emphasis added).

MTGLQ contends that it is a creditor, not a debt collector, and therefore that it falls outside the FDCPA's ambit. Doc. 21 at 3. In his brief, Booker responded that under *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496 (7th Cir. 2008), an entity that acquires a debt already in default may be considered a debt collector, and is "categorically *not* a creditor." *Id*. at 501. Until very recently, Booker's argument was right, at least in the Seventh Circuit. However, the Supreme Court held earlier this summer in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), that "a debt purchaser … may indeed collect debts for its own account without triggering the statutory definition [of 'debt collector']." *Id*. at 1721-22. The Court made clear that this is so regardless of whether the debtor had defaulted prior to the debt holder's acquisition of the debt. *Id*. at 1724 ("So a company collecting purchased defaulted debt for its own account … would hardly seem to be barred from qualifying as a creditor under the statute's plain terms."). At the hearing on this motion, Booker's counsel conceded with admirable candor that *Henson* is fatal to her FDCPA claim against MTGLQ. The court agrees and therefore dismisses that claim.

B.  **Shellpoint**

Shellpoint is a mortgage servicer and does not own Booker's debt, so it is a "debt collector" governed by the FDCPA. Shellpoint argues, however, that it is not liable under the FDCPA because the Notice of Sale did not violate the automatic stay. Doc. 21 at 4-5.

The Bankruptcy Code provides that the filing of a bankruptcy case automatically stays "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). The Code further stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case." *Id*. § 362(a)(2). The Code adds that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." *Id*. § 362(c)(1).

The stay arising from Booker's bankruptcy was in effect at the time Shellpoint sent the Notice of Sale to Booker. Shellpoint contends, however, that once the bankruptcy plan—which included the above-quoted provision surrendering Booker's interest in the Lisle property to satisfy her mortgage debt—was confirmed on September 16, 2016, that property was no longer "property of the estate" and therefore was no longer subject to the stay. Doc. 21 at 4. Booker responds that the foreclosure action was an action not only against the Lisle property, but also against her. Doc. 29 at 6. Each side's position finds support in the Bankruptcy Code and Illinois law.

According to Shellpoint, under a straightforward reading of § 362(c)(1), property that is no longer "property of the estate" is no longer subject to the bankruptcy stay. It follows, Shellpoint continues, that once the bankruptcy plan was confirmed on September 16, 2016, the Lisle property was no longer property of the bankruptcy estate because the plan extinguished

4

Booker's interest in the property. Shellpoint concludes, then, that when it served the Notice of Sale on Booker, any action against *the property* was no longer subject to the automatic stay.

Booker retorts that the mortgage foreclosure action was an action against *her*. Under Illinois law, a foreclosure action is *quasi in rem*, meaning that although it concerns rights to a particular piece of property, it is directed at a person. *See ABN AMRO Mortg. Grp., Inc. v. McGahan*, 931 N.E.2d 1190, 1196 (Ill. 2010) ("In *in rem* actions, the property itself is the defendant, while in *quasi in rem* actions, a named party is the defendant. In a foreclosure action, the property is not the defendant. Rather, the mortgagor, the person whose interest in the real estate is the subject of the mortgage, is a necessary party defendant to the foreclosure proceedings.") (citation omitted); *Turczak v. First Am. Bank*, 997 N.E.2d 996, 1001 (Ill. App. 2013). It follows, Booker concludes, that a foreclosure action is an action "against the debtor," 11 U.S.C. § 362(a)(1), and thus falls into the category of actions covered by the bankruptcy stay.

Shellpoint has the better of the argument, for in considering the extent (if any) to which a bankruptcy stay applies to a foreclosure proceeding, the key issue is whether the debtor has retained any interest in the property. In *Matter of Tynan*, 773 F.2d 177 (7th Cir. 1985), the Seventh Circuit held that the mortgagor's filing a bankruptcy case extended the Illinois redemption period on a mortgage for sixty days, even if a foreclosure sale had already taken place, provided that the statutory redemption period was still running. *Id*. at 179. In reaching this conclusion, the court noted that while most of the mortgagor's rights in the property had been extinguished by the pre-bankruptcy filing foreclosure sale, the right of redemption remained at the time of the bankruptcy filing and passed to the bankruptcy estate. *Ibid*. From these principles, it follows that "[t]he act of carrying out a judicial sale of mortgaged property *in which the debtor has any interest* is clearly the type of conduct stayed by … § 362(a)." *In re*

5

*Jackson*, 1993 WL 340926, at *3 (Bankr. N.D. Ill. Aug. 31, 1993) (citing *Matter of Tynan*) (emphasis added). By the same token, however, proceeding to a judicial sale of a foreclosed-upon property does *not* violate the automatic stay if the debtor/mortgagor no longer has any interest in the property. *See In re Heiserman*, 78 B.R. 899, 902 (Bankr. C.D. Ill. 1987) (citing *Tynan* for the proposition that where a debtor has no legal or equitable interest in certain property, actions taken with respect to that property do not violate the automatic stay); *cf. In re Thompson*, 894 F.2d 1227, 1229 (10th Cir. 1990) (holding in a slightly different context that, "[a]t the very least, a mortgage debtor must have some legal or equitable interest in property … if he hopes to retain it through the bankruptcy cure provisions. No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest") (citation omitted); *In re Omni Graphics, Inc.*, 119 B.R. 641, 642 (Bankr. E.D. Wis. 1990) (stating, in a case concerning the public sale of certain of the debtor's assets where the debtor had signed an agreement providing for "surrender of possession" as distinct from surrender of title, that whether the sale of those assets violated the automatic stay "depends upon whether the debtor's estate retained any property interest in the assets as of the time they were sold").

     That is the situation presented here. Booker surrendered her interest in the Lisle property as part of her confirmed bankruptcy plan. Booker cannot question this fact, as the Bankruptcy Code makes clear that "[t]he provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). The Code further provides that, "*[e]xcept as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b) (emphasis added). Booker's confirmed plan "otherwise provide[s]" that she surrendered all rights to the Lisle property to satisfy her

6

mortgage debt. Thus, as of September 16, 2016, when her bankruptcy plan was confirmed, Booker had no interest in the Lisle property.

Accordingly, Shellpoint's sending Booker the Notice of Sale and otherwise proceeding to the judicial sale did not violate the bankruptcy stay. And because Booker's FDCPA claim against Shellpoint rests on the premise that the Notice violated the automatic stay, Booker has no viable FDCPA claim against Shellpoint.

## II. ICFA Claim

Like Booker's FDCPA claim, her ICFA claim rests on the premise that sending the Notice of Sale violated the automatic stay. Doc. 1 at ¶ 87. Because sending the Notice did not violate the automatic stay, the ICFA claim fails as well.

Although the analysis could stop there, Defendants also argue that even if sending the Notice of Sale violated the automatic stay, the Bankruptcy Code would preempt any ICFA claim arising from that violation. Doc. 21 at 5-6. The Seventh Circuit has not directly addressed this issue, but two circuits have concluded that the Bankruptcy Code preempts state law claims grounded in conduct connected to the bankruptcy proceedings. *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447-48 (1st Cir. 2000) (holding a state law unjust enrichment claim against a creditor preempted by the Bankruptcy Code); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 912-16 (9th Cir. 1996) (holding a state law malicious prosecution claim preempted by the Bankruptcy Code); *see also Twomey v. Ocwen Loan Servicing, LLC*, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016) ("Time and time again, courts in this district have held that the Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts.") (citing cases). Booker fails to respond to the preemption argument, thus forfeiting the point and providing an independent ground for dismissing her ICFA

7

claim. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court.").

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted. In so holding, the court also notes that Booker very briefly asserted in her complaint and opposition brief that the Notice of Sale was misleading because it named the wrong plaintiff. Doc. 1 at ¶ 33; Doc. 29 at 2-3. But because Booker does not connect this alleged flaw to any legal argument, she has forfeited any claim that it gives rise to liability under the FDCPA or the ICFA. *See Firestone Fin. Corp*, 796 F.3d at 825; *G&S Holdings LLC*, 697 F.3d at 538; *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ([P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

The dismissal of Booker's complaint is without prejudice to her filing an amended complaint. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Booker has until August 29, 2017 to file an amended complaint. If she does not do so, the dismissal will convert automatically to a dismissal with prejudice, and judgment will be entered. If Booker files an amended complaint, Defendants shall answer or otherwise plead to the amended complaint within three weeks of its filing.

August 8, 2017

United States District Judge